FILED
CLERK

12/22/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THOMAS HARVEY, *individually and on behalf of all others similarly situated*,

                *Plaintiff*,

        -against-

WK KELLOGG CO. and WALMART INC.,

                *Defendants*.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:25-cv-03984 (SJB) (JMW)

**A P P E A R A N C E S:**

    Dewayne Layfield
    **Law Office of L. Dewayne Layfield**
    P.O. Box 3829
    Beaumont, TX 77704

    Nicholas T. Zbrzeznj
    **Southern Atlantic Law Group, PLLC**
    290 1st Street
    Winter Haven, FL 33880

    Ariana V. Held
    **Law Offices of Howard W. Rubinstein**
    305 Broadway, Suite 700
    New York, NY 10007
    *Attorneys for Plaintiff*

    Dean N. Panos
    Alexander Smith
    **Jenner & Block LLP**
    353 N. Clark Street
    Chicago, IL 60665
    515 South Flower Street
    Los Angeles, CA 90071
    *Attorneys for Defendant*s

1

**WICKS**, Magistrate Judge:

Plaintiff Thomas Harvey ("Plaintiff") commenced this consumer class action asserting causes of action for violations of New York General Business Law §§ 349, 350, and breach of express and implied warranties of merchantability against Defendant WK Kellogg Co. ("WKKC") and Defendant Walmart Inc. ("Walmart") (collectively, "Defendants") for their alleged misrepresentation and false advertising statements made on labels of Kellogg's Froot Loops with Marshmallows Cereal 16.2 oz, 9.3 oz, and 23.7 oz boxes (collectively, "Product"). (*See generally* ECF No. 17.) Specifically, Plaintiff contends that he purchased the 16.2-ounce box of cereal in "reasonable reliance" on the label's advertising that "1 1/3 cups of the cereal is equivalent to 39 grams of the cereal" and that the cereal "contains about 12 servings per container," both of which Plaintiff avers are "erroneously stated" metrics. (*Id.* at ¶¶ 3, 10, 11.)

The parties are before the Court on Defendants' motion seeking a partial stay of discovery pending the resolution of their anticipated motion to dismiss the Amended Complaint, or, alternatively, a complete stay of discovery as to Defendant Walmart. (ECF No. 22 at p. 6.) Plaintiff opposes. (*See* ECF No. 23.) For the reasons that follow, Defendants' motion to stay (ECF No. 22) is **GRANTED** in its entirety.

## BACKGROUND

Plaintiff's action centers around the alleged misrepresentations and falsely advertised statements made by Defendants in the Nutritional Facts Panel ("NFP") section of the Product's label. (ECF No. 17 at ¶ 4.) Plaintiff contends that Defendants "erroneously stated the metric mass equivalent of the stated serving size" based on relevant FDA regulations, resulting in the Product not containing "the promised number of servings stated on its label and advertising." (*Id.* at ¶ 11.) According to Plaintiff, the NFP on the back of the 16.2 oz Product states that the Product

2

provides "about 12 servings per container," and that the serving size for the Product is 1 1/3 cups, which, according to Plaintiff, Defendants falsely state is equivalent to 39 grams of the ready-to-eat cereal Product. (*Id.* at ¶ 43.) Based on Plaintiff's independent laboratory testing, however, a 1 1/3 cup serving of the Product weighs over 45 grams, not the 39 grams claimed on the NFP of the Product's label. (*Id.* at ¶¶ 44, 47.) Therefore, as Plaintiff contends, the label "should have stated 'about 10 servings'" so as to "make a truthful statement on the NFP of the Product." (*Id.* at ¶ 44.) As such, "provided 13.68% fewer servings . . . than promised on the label . . . ." (*Id.*)

Indeed, Plaintiff maintains that "Defendants' conduct—understating the mass equivalent of the 1 1/3 cup serving size and misstating the number of servings contained in the Product—violates the FDA regulations and guidance because the Product's false label makes the Product misbranded under FDA regulations" and is actionable under New York General Business Law §§ 349, 350. (*Id.* at ¶ 13.) It was Plaintiff's reliance on the information listed in the NFP which formed the basis for "making product comparisons and informing him regarding his decision to purchase the Product." (*Id.* at ¶ 40.) Consequently, Plaintiff and other class members were injured by Defendants "understating the mass equivalent of the 11/3 cup serving size and thus delivering fewer servings than represented on the Product's label." (*Id.* at ¶ 12.) Accordingly, Plaintiff brings this action asserting causes of action for violation of New York General Business Law ("GBL") §§ 349, 350, and breach of express and implied warranty of merchantability. (*Id.* at pp. 32-47.)

Plaintiff filed its Amended Complaint on October 23, 2025 and the parties appeared before the undersigned for an Initial Conference on November 4, 2025. Following the Initial Conference, the undersigned entered a discovery schedule. (ECF No. 19.) Two days later,

Defendants filed their motion for a premotion conference on their anticipated motion to dismiss the Amended Complaint for failure to state a claim (ECF No. 20) which Plaintiff opposed on November 13, 2025. (ECF No. 21). An in-person premotion conference has been set before the Hon. Sanket J. Bulsara on January 12, 2026. (Electronic Order dated December 2, 2025). Defendants filed the present motion requesting a "partial stay of discovery—including all custodial discovery and all discovery from Walmart—pending the resolution of Defendants' anticipated motion to dismiss" (ECF No. 22 at p. 1) which Plaintiff opposes (ECF No. 23).

## LEGAL STANDARD

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *L.N.K. International, Inc. v. Continental Casualty Company*, No. 22-cv-05184 (GRB) (JMW), 2023 WL 2614211, at *1 (E.D.N.Y. Mar. 23, 2023) (quoting *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010)) (citation omitted). The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court. That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Gagliano v. United States*, No. 24-cv-07930 (SJB) (JMW), 2025 WL 1104042, at *2 (E.D.N.Y. Apr. 14, 2025) (citing *Weitzner v. Sciton, Inc.*, No. CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006)). Rather, "[u]nder Fed. R. Civ. P. 26(c), a district court may stay discovery during the pendency of a dispositive motion for 'good cause' shown." *Alloway v. Bowlero Corp.*, No. 2:24-CV-04738 (SJB) (JMW), 2025 WL 1220185, at *1 (E.D.N.Y. Apr. 28, 2025) (citing *Hearn v. United States*, No. 17-CV-3703, 2018 WL 1796549, at *2 (E.D.N.Y. Apr. 16, 2018).

4

In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Brinkmann v. Town of Southold, New York*, No. 21-cv-02468 (LDH) (JMW), 2022 WL 3912974, at *1 (E.D.N.Y. Aug. 31, 2022) (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Vida Press v. Dotcom Liquidators, Ltd.*, 22-cv-2044 (HG) (JMW), 2022 WL 17128638, at *1 (E.D.N.Y. Nov. 22, 2022) (quoting *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006)). It is against this backdrop that the Court considers the present application.

## DISCUSSION

### A. Whether Defendants Have Made a Strong Showing That Plaintiff's Claims are Unmeritorious[1]

Defendants are preparing to move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the entire Amended Complaint. Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also CompassCare v. Hochul*, 125 F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")). Complaints are properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

---

[1] In considering the present motion, the Court is basing the analysis solely upon the arguments made in the pre-motion letters which are not intended to prejudge in any way the motion to dismiss in any way which will be briefed before, and considered by, the Hon. Sanket J. Bulsara.

5

558. Here, it appears that a "majority of Plaintiff's claims are likely to result in dismissal, warranting the stay at this stage." *Armstrong v. Hempstead Union Free School Dist.*, No. 25-cv-03611 (RPK) (JMW), 2025 WL 3440499, at *2 (E.D.N.Y. Dec. 1, 2025).

### i.  *Preemption*

Defendants argue that Plaintiff's claims are preempted by the FDCA because Plaintiff seeks to impose liability on "WKKC under state law based on testing that does not comport with the FDA's regulatory framework." (ECF No. 22 at p. 5; ECF No. 20 at p. 3.) The FDCA contains detailed requirements regarding the serving size and number of servings that must be displayed on nutrition labels. *See* 21 U.S.C. § 343(q). The FDCA expressly preempts "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)." *Id.* § 343–1(a)(4). The FDCA also requires nutrition labels to display "the serving size which is an amount customarily consumed, and which is expressed in a common household measure that is appropriate to the food", as well as "the number of servings ... per container." 21 U.S.C. § 343(q)(1)(A)-(B).

Relevant here, FDCA regulations require that the serving size for a "cereal" use a reference amount of 15 grams. *See* 21 C.F.R. § 101.12(b), table 2. The nutrition label must display the serving size as a common household measure, with the reference amount in parentheses next to that. *Id.* § 101.9(b)(7). The common household measure used must be the one that "most closely approximates the reference amount." *Id.* 101.9(b)(2)(iii). The "number of servings" shown on the label must also be calculated according to reference amount, rather than the household measure, and rounded to the nearest whole number. *Id.* § 101.9(b)(8)(i). "[T]he FDCA does not preempt state law consumer protection claims based on a nutrition label's use of an inaccurate household measure when the FDCA itself prescribes a different household

6

measure." *Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 457 (S.D.N.Y. 2022) (citing *Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1301–02 (S.D. Fla. 2022); *Vigil v. Mars, Inc.*, 16CV03818, 2017 WL 8294273, at *1 (N.D. Cal. Jan. 9, 2017)). Indeed, where a complaint's allegations, taken as true, demonstrate that "the Products' labels do not comply with the FDCA," state law consumer protection claims will not be preempted. *Id.* at 455; *see In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018) (finding plaintiffs' claims were not preempted because plaintiffs did not "seek to impose new standards or requirements in connection with their consumer protection claims. They simply want to ensure that [the defendant's] labels are truthful").

Here, according to Plaintiff, "[t]he labeling of the Product does not comply with relevant FDCA regulations and the contents of the 16.2 oz Product cannot yield the actual 11.77 servings promised." (ECF No. 17 at ¶ 46.) Indeed, based on independent laboratory testing, Plaintiff found that "the mass of the 1 1/3 cups serving of [the] Product is understated, meaning that all sizes of the Product would yield the same percentage . . . of fewer servings." (*Id.*) As such, under FDA regulations, Plaintiff contends, that "the metric unit equivalent of the 1 1/3 cups serving of the Product *should be*, but is not, parenthetically disclosed after the common household measure of 1 1/3 cups. Based on the Plaintiff's Product Testing, the metric mass equivalent of a 1 1 / 3 cups serving of the Plaintiff's Product should have been reported as '(45g)." (*Id.* at ¶ 48 (emphasis added)). Taking these allegations as true, it appears as this stage that Plaintiff's claims would not be preempted because it appears that the Product's labels do not comply with the FDCA. *See Gwinn*, 643 F. Supp. 3d at 456 (denying motion to dismiss on preemption grounds where the complaint alleged that the product's density "most closely approximates a 2-gram

7

serving size" in direct noncompliance with the FDCA's requirements for that product) (internal marks omitted).

### ii. *New York General Business Law §§ 349, 350*

New York law prohibits "false advertising" and "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state." N.Y. Gen. Bus. Law §§ 349(a), 350. A plaintiff bringing a claim under these statutes must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted). An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

In *Gwinn*, the court denied defendant's motion to dismiss plaintiff's false advertising and deceptive business practices claim under New York General Business Law §§ 349, 350. 643 F. Supp. 3d at 457. There, plaintiff alleged that defendants "exaggerate[d]" the nutritional labels of various powdered coffee additives listed on the container of defendants' product and that the weight of each teaspoon was incorrectly labeled. *Id.* at 453. The Hon. Denise L. Cote determined that plaintiff plausibly alleged she was injured by paying a higher price for the products purchased than she otherwise would have, and it was undisputed that defendants' acts were directed at consumers. *Id.* at 456. Additionally, plaintiff plausibly alleged that defendants' nutrition labels materially misled consumers. *See id.* Namely, a "reasonable consumer might [] be misled into thinking that each Product container holds more teaspoon-sized servings than it actually does" because plaintiff alleged that the nutrition labels suggested that two grams of an

8

additive could fill a larger volume that they in fact could, thereby resulting in an inaccuracy in the "household measure." *Id.*

Similarly, here, Plaintiff alleges that she suffered "financial injury" resulting from an increased purchase price (ECF No. 17 at ¶¶ 59, 61) and that Defendants' actions are misleading and directed at consumers (ECF No. 1 at ¶¶ 129, 162, 166). Moreover, like in *Gwinn*, Plaintiff precisely alleges that "reasonable consumers will continue to plausibly rely on the Product's labeling and advertising and be misled and deceived into believing that they are purchasing Product containing the number of servings of ready-to-eat cereal stated on the [label]." (*Id.* at ¶ 65.) In addition, Plaintiff avers that himself and other class members would "not have purchased the [cereal] or would have paid less" for it. (*Id.* at ¶ 78); *Cohen v. Nutricost*, 747 F. Supp. 3d 467, 481 (E.D.N.Y. 2024) (denying motion to dismiss claims under GBL §§ 349 and 350 where plaintiff alleged he would not have purchased the product had it not been for the misbranding on the serving size). Lastly, Defendants' contention that "Plaintiff [] lacks viable claims because the labeling accurately states the net weight of each cereal box" (ECF No. 22 at p. 5) holds little weight as this argument was expressly rejected in *Gwinn*. *See* 643 F. Supp. 3d at 456-57 ("But the harm from a misleading label is not vitiated as a matter of law by the presence of inconsistent but more accurate information on the label, particularly when consumers have no way to tell from Product packaging alone which set of information on the label is correct.") Accordingly, it appears that Plaintiff's claim for violations of N.Y. Gen. Bus. Law §§ 349, 350 is meritorious as to Defendant WKKC.

Conversely, with respect to Defendant Walmart, Plaintiff contends that "Walmart markets, promotes, advertises, distributes and/or sells ready-to-eat cereal products, including the Product at issue in this litigation." (ECF No. 17 at ¶ 127.) Merely authorizing the sale of an

9

allegedly mislabeled product ordinarily does not suffice for a meritorious GBL claim under §§ 349, 350. *See Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 397 (E.D.N.Y. 2013) (finding that passively reciting advertisements and allegedly false promises insufficient for a claim of deceptive practices against the retailer of a product).

For example, in *Cohn v. Kind, LLC*, plaintiff contended that GNC and Vitamin Shoppe were liable for the allegedly false advertising because they "authorized the sale of the mislabeled KIND bars." No. 13 Civ. 8365 (AKH), 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015). In rejecting this argument, the Hon. Alvin K. Hellerstein determined that plaintiff failed to allege "any specific conduct by the Retailer Defendants" imputing the manufacturer's statements to them. *Id.* Accordingly, the court granted the motion to dismiss claims of deceptive and false advertising under New York General Business Law §§ 349, 350 asserted against these "Retailer Defendants." *Id.* Similar to the claims against the "Retailer Defendants" in *Cohn*, Plaintiff's claims against Walmart do not allege that Walmart had any role in the labeling of the product or the calculation of the number of servings. Absent such a showing, it appears that Plaintiff's claim for violations of the N.Y. Gen Bus. Law §§ 349, 350 would fail as to Defendant Walmart.

### iii. *Breach of Express Warranty of Merchantability*

Express warranties are governed by N.Y. U.C.C. § 2-313(1)(a), which provides that an express warranty includes "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2-313(1)(b). Section 2-318 further provides that "[a] seller's warranty whether express or implied extends" to any foreseeable user "who is injured in person by breach of the warranty." As such, "[t]o state a

10

claim for breach of express warranty, the plaintiff must show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase, and that the warranty was relied upon.'" *Gelber v. Stryker Corp.*, 788 F.Supp.2d 145, 165 (S.D.N.Y. 2011) (alteration in original) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 1989)).

Notably, "to asse[r]t a claim for breach of an express . . . warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021) (internal quotations omitted). A "plaintiff must provide factual allegations -- such as the date and method plaintiff sent a pre-suit notice -- supporting the contention that she notified [the seller] of the alleged breach within a reasonable time." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021) (citation omitted). For example, in *Stern*, the court dismissed plaintiff's breach of express warranty claim for failure to provide "pre-suit notice of an alleged breach" to the seller of a supposedly defective refrigerator. *Stern v. Electrolux Home Products, Inc.*, No. 22-cv-3679 (JMA) (ARL), 2024 WL 416495, at *10 (E.D.N.Y. Jan. 30, 2024), *report and recommendation adopted*, 2024 WL 4297656 (E.D.N.Y. Sept. 26, 2024). There, plaintiff's complaint alleged that he notified the seller of the defective product and that defendant "received sufficient and timely notice of the breaches of warranty alleged herein." *Id.* The court concluded these allegations insufficient to establish the pre-notice requirement because plaintiff "failed to allege when notice was given." *Id.*

Similarly, here, Plaintiff makes solely conclusory assertions that notice was provided to Defendants. Namely, Plaintiff avers that "untrue, false and materially misleading statements" were made "[d]espite being notified of the material misrepresentations described in the Class

11

Action Complaint." (ECF No. 17 at ¶¶ 143, 174, 189.) Similarly, "Defendants had prior notice that the Product and advertising contained these untrue, false, and misleading statements regarding the number of servings provided by the Product." (*Id.* at ¶ 142.) Without more, it appears that Plaintiff's express warranty of merchantability claim would fail. *Petrosino v. Stearn's Prods., Inc.,* No. 16-CV-7735, 2018 U.S. Dist. LEXIS 55818, 2018 WL 1614349, at *2 (S.D.N.Y. Mar. 30, 2018) (dismissing the express warranty claim where "[p]laintiffs failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery").

  **iv.**  *<u>Breach of Implied Warranty of Merchantability</u>*

Under the U.C.C., a sale of goods by default comes with an implied warranty "that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). The implied warranty of merchantability "does not require that the goods be perfect or that they fulfill a buyer's every expectation; it only requires that the goods sold be of a minimal level of quality." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433-34 (2d Cir. 2013). A "breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" *Feldman v. Wakefern Food Corp.*, 716 F. Supp. 3d 71, 86 (S.D.N.Y. 2024) (citations omitted).

Plaintiff's implied warranty claim at this stage would likely fail as to Defendant WKKC. Under New York law, "a claim for breach of implied warranty requires privity, unless the claim arises out of a personal injury." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 245 (S.D.N.Y. 2022); *Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 71 N.Y.S.3d 614, 616 (2d Dep't 2018) ("No implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." (brackets and

12

citation omitted)). Here, Plaintiff does not allege personal injuries, he solely seeks economic damages. (*See* ECF No. 17 at ¶¶ 44, 135.) He, therefore, must establish privity of contract.

Remote purchasers—those "having purchased the Product from a third-party retailer"— "definitionally are not in privity with the manufacturers of the products that they buy." *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 459 (S.D.N.Y. 2022); *Zachmann v. Coleman Co.*, No. 20-CV-9146, 2022 WL 161480, at *5 (S.D.N.Y. Jan. 18, 2022) ("A remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer"); *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 213 (N.D.N.Y. 2023) (finding plaintiff not in privity with the product's manufacturer where plaintiff alleged he purchased the defective products "through third-party retailers, not directly from [the manufacturer].") Given the absence of any allegation as to privity between WKKC and Plaintiff, it is likely that this claim would not survive a motion to dismiss. *See Velez v. Lasko Products, LLC*, 706 F. Supp. 3d 444, 461 (S.D.N.Y. Dec. 14, 2023) (dismissing a claim for breach of the implied warranty of merchantability where plaintiff maintained he purchased the product from a Home Depot store, rather than from the manufacturer directly).

Similarly, with respect to Defendant Walmart, while Plaintiff contends his "most recent purchase of the Product was from a Walmart store located in New York creating privity of contract between Plaintiff and Walmart" (ECF No. 17 at ¶ 180), nowhere does Plaintiff "allege[] that the Product was unfit for its ordinary purpose—human consumption." *Feldman*, 716 F. Supp. 3d at 86; *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim where "[a]lthough the [complaint] asserts that Natural Brew does not conform to the promises made on its containers, labels, and literature . . . it makes no allegation that Natural Brew is unfit for

13

human consumption"). Absent such a showing, it appears at this juncture that Plaintiff's implied warranty of merchantability claim would fail. *See Brockington v. Dollar General Corp.*, 695 F. Supp. 3d 487, 514 (S.D.N.Y. 2023) ("Plaintiff does not allege that the Product was unfit for human consumption. He therefore fails to allege that the Product was unfit for the ordinary purposes for which it was intended.").

Accordingly, "as the majority of the claims could result in dismissal, this factor weighs in favor of granting the stay." *Armstrong*, 2025 WL 3440499, at *5.

### B. Breadth of Discovery and the Corresponding Burdens

The potential scope of discovery weighs in favor of granting a stay of discovery. The breadth of discovery in this consumer class action would be comprised of paper-intensive document production regarding the labelling, manufacturing, and production of the Product and NFP's. *See Greenidge v. Suffolk County Police Dep't*, No. 25-cv-03604 (SJB) (JMW), 2025 WL 2645549, at *3 (E.D.N.Y. Sept. 15, 2025) (granting stay of discovery where numerous depositions and "paper-intensive document production" would result).

Further, Defendants jointly seek to dismiss the entirety of the First Amended Complaint (*see* ECF No. 20 at p. 1), another factor that weighs in favor of staying of discovery. *See Alloway v. Bowlero Corp.*, No. 24-cv-04738 (JS) (JMW), 2024 WL 4827752, at *6 (E.D.N.Y. Nov. 18, 2024); *see also Romain v. Webster Bank N.A.*, No. 23-cv-5956 (NRM) (JMW), 2024 WL 3303057, at *5 (E.D.N.Y. July 2, 2024) ("[D]iscovery should be stayed given that all discovery would be for naught if the Complaint is dismissed in its entirety by Judge Morrison as requested"); *see also Fiordirosa v. Publr. Clearing House, Inc.*, No. 21-CV-6682 (PKC) (JMW), 2022 WL 3912991, at *3 (E.D.N.Y. Aug. 31, 2022) (granting defendant's motion to stay where, among other factors, a ruling on the motion to dismiss could "dismiss the Amended Complaint

14

entirely"). Under the circumstances present here, granting the stay would help the parties "avoid substantial burden and waste of precious resources." *Cohen v. Saraya USA, Inc.*, No. 23-CV-08079 (NJC)(JMW), 2024 WL 198405, at *3 (E.D.N.Y. Jan. 18, 2024).

### C. Risk of Unfair Prejudice to the Party Opposing the Stay if Granted

There exists little to no prejudice if a stay is granted. The case is still in its nascent stages, the parties just appeared before the undersigned for an Initial Conference and, according to the Scheduling Order entered following the Initial Conference (*see* ECF No. 19 at p. 5), minimal discovery has taken place. *Miller v. Trans Union, LLC*, No. 25-cv-03370 (JS) (JMW), 2025 WL 2677078, at *4 (E.D.N.Y. Sept. 18, 2025). Moreover, the parties do not raise, nor does the Court find, any threat of destruction of documents or spoliation of evidence based on the causes of action asserted here. *See O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (concluding the potential spoliation of evidence "does not constitute sufficient prejudice to warrant a stay of discovery . . . .") Additionally, Judge Bulsara has already set a pre-motion conference on Defendants' anticipated motion to dismiss (*see* Electronic Order dated December 2, 2025), and the parties have briefed their pre-motion conference letters. (ECF Nos. 20, 21.) "A stay, therefore, would be for only a limited period of time." *Greenidge v. Suffolk County Police Dep't*, No. 25-cv-03604 (SJB) (JMW), 2025 WL 2645549, at *3 (E.D.N.Y. Sept. 15, 2025) (finding no prejudice existed should a stay be granted under identical circumstances). Accordingly, this factor weighs in favor of granting a stay.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay discovery (ECF No. 22) is **GRANTED**. In the event the motion to dismiss is denied - in part or in full - the parties are directed to meet and confer and file a joint proposed schedule for discovery within 10 days of the ruling on the motion to dismiss.

Dated: Central Islip, New York
December 22, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge