**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS HARVEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WK KELLOGG CO and WALMART INC.,<br><br>Defendants. | Case No. 2:25-cv-3984-SJB-JMW<br><br>The Honorable Sanket J. Bulsara<br><br>Served: February 9, 2026<br>Corrected Version Served: February 10, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS (CORRECTED)**


**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 923-2765
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendants
WK Kellogg Co and Walmart Inc.

## TABLE OF CONTENTS

INTRODUCTION .......... 1

RELEVANT FACTUAL ALLEGATIONS .......... 2

ARGUMENT .......... 4

I. Plaintiff Cannot State a Plausible Breach of Express Warranty Claim Against Walmart, Which Had No Role in Manufacturing or Labeling the Cereal at Issue. .......... 4

II. Plaintiff's "90-Day Money-Back Guarantee" Theory Also Fails. .......... 7

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Avola v. Louisiana-Pacific Corp.*,
991 F. Supp. 2d 381 (E.D.N.Y. 2013) ........ 5, 6, 7

*Barrett v. Black & Decker (U.S.) Inc.*,
2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008) ........ 8

*Brodie v. Green Spot Foods, LLC*,
503 F. Supp. 3d 1 (S.D.N.Y. 2020) ........ 9

*Campbell v. De La Torre*,
2025 WL 2307248 (S.D.N.Y. Aug. 8, 2025) ........ 4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 4

*Cohn v. KIND, LLC*,
2015 WL 9703527 (S.D.N.Y. Jan. 14, 2015) ........ 5, 7

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ........ 4

*Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co.*,
382 F. App'x 110 (2d Cir. 2010) ........ 4, 7

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........ 7

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
62 F.3d 69 (2d Cir. 1995) ........ 4

*Parker v. Raymond Corp.*,
930 N.Y.S. 2d 27 (2d Dep't 2011) ........ 7

*Pinello v. Andreas Stihl AG*,
2011 WL 1302223 (N.D.N.Y. Mar. 31, 2011) ........ 8

*Promuto v. Waste Mgmt., Inc.*,
44 F. Supp. 2d 628 (S.D.N.Y. 1999) ........ 7

*Schimmenti v. Ply Gem Indus., Inc.*,
549 N.Y.S. 2d 152 (1989) ....................4

*In re Scotts EZ Seed Litigation*,
2013 WL 2303727 (S.D.N.Y. May 22, 2013) ....................5, 6, 7

*Wedra v. Cree, Inc.*,
2020 WL 1322887 (S.D.N.Y. Mar. 20, 2020) ....................9

**Statutes**

N.Y. U.C.C. § 2-313 ....................1, 4

## INTRODUCTION

Plaintiff alleges that Froot Loops with Marshmallows cereal is mislabeled because each box contains fewer 1 1/3 cup "servings" than the label promises. In addition to his claims against WK Kellogg Co ("WKKC"), which manufactures, labels, and distributes the cereal across the United States through many different retailers, Plaintiff also asserts a claim for breach of express warranty against Walmart, the retailer from which he allegedly purchased the cereal. This Court should dismiss that claim.

Plaintiff does not allege that Walmart had any role in manufacturing the cereal, labeling the cereal, or determining the number of "servings" in each box of cereal. Nor does Plaintiff allege that Walmart made any representations about the cereal separate and apart from the labeling. Plaintiff nonetheless alleges that Walmart is liable for breach of express warranty because it: (1) sold Plaintiff a purportedly mislabeled name-brand product; and (2) failed to honor its purported "90-day money-back return guarantee." Both theories are meritless.

The first theory fails because Walmart did not make any promises or affirmations of fact about the contents of the cereal box Plaintiff purchased. It is axiomatic that a claim for breach of express warranty requires a statement "by the seller." N.Y. U.C.C. § 2-313. Plaintiff does not—and cannot—allege that Walmart made any statements about the quantity of cereal in each box of Froot Loops with Marshmallows. And under similar circumstances, many courts in New York have dismissed breach-of-warranty claims against retailers who simply served as a passive conduit for a manufacturer's products. This Court should reach the same conclusion here.

The second theory fails because Plaintiff does not (and cannot) plausibly allege that he attempted to avail himself of Walmart's money-back guarantee. Leaving aside his failure to allege *any* details about this purported guarantee, Plaintiff does not allege that he attempted to return the cereal to a Walmart store; to the contrary, he admits that he sent the cereal to a laboratory for

testing. Nor does Plaintiff allege that he asked Walmart for a refund of the amount he spent on the product; instead, he admits that he sent a demand letter in which he requested that WKKC and Walmart pay class-wide restitution. *See* Ex. 1.[1] Absent any plausible allegation that Plaintiff attempted to seek a refund from Walmart pursuant to its purported 90-day money-back guarantee, Plaintiff cannot establish that Walmart breached any such guarantee.

Walmart had no role in manufacturing, labeling, or advertising Froot Loops with Marshmallows cereal. Its sale of an allegedly mislabeled name-brand product does not make it liable for breach of express warranty. This Court should dismiss Plaintiff's claim against Walmart.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that he purchased a 16.2-ounce box of Froot Loops with Marshmallows cereal from a Walmart store on February 2, 2024. Second Am. Compl. ("SAC") ¶ 68. Unlike most consumers, who presumably *eat* the cereal they purchase from the store, Plaintiff alleges that he sent the box of cereal that he purchased at Walmart to an "independent laboratory." *Id.* ¶ 47. The laboratory report Plaintiff attached to his complaint indicates that the laboratory did not receive this box of cereal until March 19, 2025—over a year after he purchased it, and over four months after the "best by" date printed on the box. *See* Docket Entry ("DE") 28-3, at 1. There is no indication that Plaintiff ever attempted to consume this box of cereal, and Plaintiff's allegations make clear that he purchased this cereal box solely so his lawyers could test its contents.

According to Plaintiff, the laboratory determined that "the metric mass equivalent of a 1 1/3 cups serving of the Product purchased by Plaintiff is actually 45.26 grams," rather than the "39 grams claimed on the NFP [Nutrition Facts panel] of the Product's label." SAC ¶ 47. Plaintiff

[1] Unless noted, all exhibits are attached to the Declaration of Alexander M. Smith, and all citations and internal quotation marks are omitted.

therefore claims that the label should have stated that a 1 1/3-cup serving of cereal weighed 45 grams instead of 35 grams. *See id.* ¶ 49. Because a serving of cereal allegedly weighs 45.26 grams, and because a 459.84 gram box of cereal contains only 10.16 45.26-gram servings of cereal, Plaintiff alleges that the label should have stated that the box contains "about 10 servings" of cereal. *See id.* ¶ 44. Based on this allegation, Plaintiff claims that he was "cheated out of 13.68% of the servings [he] paid for based on the labeling." *Id.* ¶ 60.

Notably, Plaintiff does not allege that Walmart had any role in manufacturing, labeling, or determining the number of "servings" in each box of Froot Loops with Marshmallows cereal. He alleges only that "Walmart markets, promotes, advertised, distributes, and/or sells ready-to-eat cereal products, including the Product at issue in this litigation." *Id.* ¶ 28. Plaintiff nonetheless claims that Walmart is liable for breach of express warranty because it "did not provide a Product with the serving size and number of servings promised, causing Plaintiff to suffer economic injury and receive less than the basis of the bargain." *Id.* ¶ 171.

Plaintiff also alleges that "Walmart offers a 90-day money-back return guarantee." *Id.* ¶ 174. But Plaintiff does not allege that he attempted to return the product to a Walmart store or that he attempted to return it by mail; to the contrary, he admits that he sent the product to an "independent laboratory," which opened up the cereal box to test its contents. *Id.* ¶ 47. Nor does Plaintiff allege that he took his receipt—which is still in his possession, *see* DE 28-1—to a Walmart store for a refund. Instead, Plaintiff alleges that he provided "written notice" to Walmart of its alleged breach of warranty on February 9, 2024, but that Walmart "has not provided or

tendered the refund or given any reason for not providing the refund in conformance with the refund guarantee." SAC ¶ 175; *see also* Ex. 1 (copy of February 9, 2024 demand letter).[2]

Notably, the notice letter Plaintiff sent does not ask for a refund from Walmart; in fact, it does not even include the word "refund." *See* Ex. 1. Instead, it "demand[ed] that Defendants pay, at the minimum, any and all individuals who purchased the Product during the applicable statute of limitations period the greater of (a) restitution of not less than 10% of all amounts paid by any and all individuals who purchased the Product during the applicable statute of limitations period and (b) statutory damages as provided by the NY Consumer Protection Law." *Id.*

## ARGUMENT

### I. Plaintiff Cannot State a Plausible Breach of Express Warranty Claim Against Walmart, Which Had No Role in Manufacturing or Labeling the Cereal at Issue.

Under New York law, a claim for breach of express warranty arises only if there is a statement "by the seller" about the product at issue. N.Y. U.C.C. § 2-313(1); *see also, e.g.*, *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111–12 (2d Cir. 2010) ("To prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise *by the seller*, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'") (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S. 2d

[2] This Court can consider Plaintiff's demand letter in ruling on this motion to dismiss because Plaintiff references the demand letter in his complaint and relies on it as the basis for his allegation that he provided pre-suit notice to Walmart. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that a court may consider a document outside the pleadings when ruling on a motion to dismiss "where the complaint 'relies heavily on its terms and effect,' which renders the document 'integral' to the complaint") (quoting *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (same); *Campbell v. De La Torre*, 2025 WL 2307248, at *2 n.2 (S.D.N.Y. Aug. 8, 2025) (considering a pre-suit demand letter in ruling on a motion to dismiss counterclaim and finding that it was "integral" to the pleadings because it was "specifically referenced" in the defendant's counterclaim, which "stands or falls based on whether the letter constituted a proper demand").

152, 154 (1989)) (emphasis added). Plaintiff alleges that Walmart breached an express warranty because "[t]he Product's packaging and labels include promises, representations, and affirmations of fact," which "are material, objective affirmations or statements of fact about the Product that [are] part of the basis of the bargain." SAC ¶¶ 166, 168. But Plaintiff cannot state a breach of express warranty claim against Walmart because he has not alleged that *Walmart* made those representations—or *any* representations—about the number of servings in each box of cereal.

Indeed, faced with other cases in which a plaintiff asserted breach-of-warranty claims against a retailer of name-brand merchandise, New York courts have found that the retailer is not liable for a breach of warranty when it "simply parrot[s] the manufacturer's statements" or "passively" conveys advertising from the manufacturer. *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 396–97 (E.D.N.Y. 2013); *see also, e.g.*, *Cohn v. KIND, LLC*, 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015) (dismissing breach-of-warranty claims against retailers who had no involvement in the manufacturer's alleged mislabeling and noting that "[s]imply 'authorizing the sale' of KIND bars is not enough to establish vicarious liability for GNC and Vitamin Shoppe").

For example, in *In re Scotts EZ Seed Litigation*, the plaintiffs alleged that the manufacturer (Scotts) mislabeled its seeds with statements that touted the seeds' "grass-growing prowess," even though the seeds were "ineffective" and did "not grow grass when used as directed." 2013 WL 2303727, at *2 (S.D.N.Y. May 22, 2013). Based on that theory, the plaintiffs asserted breach-of-warranty claims against both Scotts and two retailers (Home Depot and Lowe's) that sold Scotts's products. *Id.* The court allowed many of the plaintiffs' breach-of-warranty claims to proceed against Scotts, but it dismissed the breach-of-warranty claims against Home Depot and Lowe's.

As the court explained, "all of the statements that could be express warranties under the UCC appear on EZ Seed's labeling," and the plaintiffs did "not allege that Home Depot or Lowe's

were involved in the packaging or labeling of EZ Seed." *Id.* at *7. Nor did the plaintiffs "allege sufficiently that Home Depot or Lowe's independently made the same promises when selling EZ Seed to plaintiffs—as opposed to merely passively displaying the promises made by Scotts on EZ Seed's labeling—or that specific statements made by Home Depot or Lowe's were otherwise 'part of the basis' of plaintiffs' bargain." *Id.* Absent any such allegations, the court found that the mere sale of Scotts's products did not give rise to a breach-of-warranty claim against the retailers. *Id.*

Similarly, in *Avola*, the plaintiff alleged that Louisiana-Pacific falsely claimed that its "SmartSide" products "work and cut just like traditional wood, taking nails and screws with ease." 991 F. Supp. 2d at 385. The plaintiff asserted a claim for breach of express warranty against both Louisiana-Pacific, which manufactured the product, and also against Home Depot, the retailer from which the plaintiff purchased the product. The court denied summary judgment with respect to Louisiana-Pacific, but it granted summary judgment with respect to Home Depot.

Although the plaintiff offered evidence that a Home Depot sales associate "recited statements" from Louisiana-Pacific's advertising, including the statement that SmartSide "nails just like wood" and "works as easy as traditional wood siding," the court found that this evidence did not support a claim against Home Depot. *Id.* at 396–97. Because the "Home Depot sales associate passively recited Louisiana-Pacific's Advertisement . . . without separately promising more, the sole basis of [the plaintiff's] bargain would be the Advertisement." *Id.* at 397. The court accordingly concluded that the plaintiff "would have the right to sue Louisiana-Pacific, but not Home Depot, for breach of express warranty and false advertising." *Id.*

Here too, Plaintiff does not—and cannot—allege that Walmart made any statements about the number of servings of cereal separate and apart from those that appear on the labeling. He alleges only that "Walmart markets, promotes, advertises, distributes, and/or sells ready-to-eat

cereal products, including the Product at issue in this litigation." SAC ¶ 28. But absent any plausible allegation that *Walmart* made statements about the number of servings of cereal in each box separate and apart from the labeling, Plaintiff cannot hold Walmart liable for breaching an express warranty based on statements that appear on *WKKC*'s labeling. *See Avola*, 991 F. Supp. 2d at 396–97; *Scotts*, 2013 WL 2303727, at *7; *Cohn*, 2015 WL 9703527, at *3.

Despite Plaintiff's suggestion to the contrary, it is not enough that Walmart is in privity with Plaintiff or that Plaintiff provided Walmart notice of its alleged breach of warranty prior to filing suit. *See* SAC ¶¶ 68, 77. While those are *necessary* requirements of a breach of express warranty claim under New York law, they do not displace the most fundamental element of that claim: "an express warranty *by the defendant* with respect to a material fact." *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (emphasis added); *see also Factory Assocs.*, 382 F. App'x at 111–12 (noting that an express warranty claim requires "an affirmation of fact or promise *by the seller*") (emphasis added). Because Plaintiff has not plausibly alleged that Walmart made any promises or affirmations of fact about the number of servings in each box of cereal, Plaintiff has not stated a plausible claim against Walmart for breach of express warranty.

**II. Plaintiff's "90-Day Money-Back Guarantee" Theory Also Fails.**

In addition to alleging that Walmart breached an express warranty by selling allegedly mislabeled name-brand merchandise, Plaintiff alleges that Walmart breached its purported "90-day money-back return guarantee" by failing to offer Plaintiff a refund after he sent a demand letter to both Walmart and WKKC. *See* SAC ¶¶ 174–78. This theory fails for at least three reasons.

<u>First</u>, Plaintiff does not even *attempt* to articulate the terms of Walmart's "90-day money-back return guarantee." *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("[A] plaintiff complaining of breach of express warranty must 'set forth the terms of the warranty upon which he relied.'") (quoting *Parker v. Raymond Corp.*, 930 N.Y.S.

2d 27, 29 (2d Dep't 2011)). He does not say whether Walmart's return policy requires him to return the product in order to receive a refund. He does not explain whether Walmart's "90-day money-back return guarantee" requires him to provide a receipt or other evidence of his purchase. His failure to set forth the terms of the alleged "90-day money-back return guarantee" is independently fatal to his claim that Walmart breached that guarantee. *See, e.g.*, *Pinello v. Andreas Stihl AG*, 2011 WL 1302223, at *17 (N.D.N.Y. Mar. 31, 2011) (holding that breach of express warranty claim failed where the plaintiff did "not identify the terms of the purported warranty"); *Barrett v. Black & Decker (U.S.) Inc.*, 2008 WL 5170200, at *12 (S.D.N.Y. Dec. 9, 2008) (similar).

Second, to the extent Plaintiff alleges a breach of Walmart's "90-day money-back *return* guarantee" (SAC ¶ 174 (emphasis added)), his claim fails because he does not allege that he attempted to return the product to Walmart. To the contrary, Plaintiff he admits that he sent the cereal to an "independent laboratory" for testing. *Id.* ¶ 47. The laboratory report Plaintiff attached to his complaint confirms that the laboratory opened the package, mixed its contents with those of another box of cereal, and measured their combined contents. *See* DE 28-3. Plaintiff does not—and cannot—allege any facts suggesting that he was eligible for a refund once he no longer had a cereal box to "return" to Walmart. And absent specific allegations to the contrary, it defies common sense to believe that Plaintiff could be eligible for a refund even if he had no product to return to Walmart. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Third, even if one assumes for argument's sake that Plaintiff was eligible for a refund even if he had discarded the product, he does not allege that he requested a refund from Walmart within 90 days of his purchase. Plaintiff does not allege that he went to a Walmart store to request a refund within 90 days of purchase or that he followed any other process for requesting a refund in accordance with Walmart's return policy. Instead, Plaintiff alleges that Walmart should have

given him a refund after he notified Walmart of its alleged breach of warranty on February 9, 2024. *See* SAC ¶ 77. But the "written notice" Plaintiff sent to Walmart does not reference Walmart's 90-day refund policy or request a refund; indeed, it does not even use the word "refund." *See* Ex. 1. Instead, it demands class-wide restitution and statutory damages, which is not remotely close to a request for a refund of the price Plaintiff paid for his box of cereal. *See id.*

Under similar circumstances, other courts in New York have dismissed express warranty claims absent plausible allegations that the defendant "refuse[d] to refund" the plaintiff for his or her purchase "upon a valid request." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 10 (S.D.N.Y. 2020) (dismissing breach-of-warranty claim premised on Amazon's money-back guarantee where the plaintiff did not "allege that she ever sought a refund from Amazon" and "the only contact she alleges was posting a negative review on the product's page on Amazon.com"); *Wedra v. Cree, Inc.*, 2020 WL 1322887, at *9 (S.D.N.Y. Mar. 20, 2020) (dismissing breach of express warranty claim based on the defendant's 10-year warranty when the plaintiff did "not allege she asked defendant to refund or replace the defective bulbs"). Here too, Plaintiff's failure to allege that he submitted a valid request for a refund within 90 days of his purchase dooms his claim that Walmart breached its "90-day money-back return guarantee."

## CONCLUSION

This Court should dismiss Plaintiff's breach of express warranty claim against Walmart with prejudice and without further leave to amend.

Dated: February 9, 2026

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Dean N. Panos[3] ____________________
Dean N. Panos (*pro hac vice*)
Alexander M. Smith (*pro hac vice*)

Attorneys for Defendants
WK Kellogg Co and Walmart Inc.

3 Pursuant to Local Civil Rule 7.1(c) and Section IV.E of the Court's Individual Practices, the undersigned certifies that this brief contains 3,052 words, including footnotes but excluding the caption, table of contents, table of authorities, signature block, and certificates.

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2025, I served the foregoing **MEMORANDUM IN SUPPORT OF WALMART'S MOTION TO DISMISS** on counsel of record for Plaintiff by electronic mail, as follows:

**THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.C.**
Ariana V. Held (ariana@avheld.com)
305 Broadway, Suite 700
New York, NY 10007

**SOUTHERN ATLANTIC LAW GROUP, PLLC**
Nicholas T. Zbrzeznj (nick@southernatlanticlaw.com)
290 1st Street S
Winter Haven, FL 33880

**LAW OFFICE OF l. DEWAYNE LAYFIELD, PLLC**
L. DeWayne Layfield (dewayne@layfieldlaw.com)
PO Box 3829
Beaumont, TX 77704

Dated: February 9, 2026

By: /s/ Alexander M. Smith
Alexander M. Smith