353 NORTH CLARK STREET CHICAGO IL 60654



Dean N. Panos
Tel. (312) 923-2765
Fax (312) 527-0484
dpanos@jenner.com

May 26, 2026

**VIA ECF**

The Honorable James M. Wicks
United States Magistrate Judge
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722

Re: *Harvey v. WK Kellogg Co*, Case No. 2:25-cv-3984-SJB-JMW
Response to Plaintiff's May 21, 2026 Discovery Dispute Letter

Dear Judge Wicks:

I represent Defendants WK Kellogg Co ("WKKC") and Walmart Inc. I write in response to Plaintiff's May 21, 2026 letter regarding: (1) WKKC's purported failure to provide Plaintiff with a list of the non-custodial sources it intends to search; and (2) Plaintiff's request that the Court require WKKC to add Sarah Ludmer and Emily Fotinos as document custodians. As explained below, there is not yet a live dispute regarding non-custodial sources, and Plaintiff's insistence on adding two additional custodians is neither necessary nor proportional to the needs of the case.

## I. WKKC Disclosed Its Proposed List of Non-Custodial Sources to Plaintiff.

Plaintiff argues at length that WKKC failed to provide him with a list of the non-custodial sources it proposed to search. Plaintiff fails to mention, however, that WKKC produced a significant volume of non-custodial documents on February 26, 2026—fifteen days after the Court issued its ESI order. Those documents, which WKKC collected from its Wellbeing & Regulatory share drive, include: (1) labeling and nutrition information for the Froot Loops with Marshmallows cereal at issue; (2) cup density testing for Froot Loops with Marshmallows cereal; (3) all versions

of WKKC's company-wide policy governing cup density testing and serving size measurements that were in effect during the putative class period; (4) information about the manufacturing process for Froot Loops with Marshmallows cereal; (5) product formulations for Froot Loops with Marshmallows cereal; and (6) specification sheets for the marshmallows that WKKC uses in Froot Loops with Marshmallows cereal.[1] WKKC's counsel subsequently confirmed to Plaintiff's counsel during a meet-and-confer call that it had obtained these documents from WKKC's Wellbeing & Regulatory Sharepoint site, and it confirmed that again via email on March 17, 2026:

> We pulled all of the non-custodial documents produced to date from WKKC's Wellbeing & Sharepoint Regulatory site. We are working on identifying specific categories of documents that reside at individual manufacturing plants and will get that information to you as soon as we can. We understand your desire to deal with all of these issues as a package, but there are a lot of moving parts on our end and we are trying to push the ball forward on the parameters of the custodial search and review while we work with the client to run down the answers to the questions you have posed.

Plaintiff's Ex. B. Plaintiff's claim that WKKC failed to provide a list of the non-custodial sources it intended to search is not accurate, and there is no live dispute for this Court to resolve.[2]

## II. The Court Should Not Force WKKC to Add Two Additional Custodians.

Rule 26(b)(1) mandates that discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This inquiry requires the Court to consider several factors, including "the

---

[1] It also bears noting that WKKC intended to produce documents in a format that would include metadata reflecting the non-custodial sources from which it obtained these documents. Plaintiff insisted, however, that he did not want WKKC to produce documents in a Relativity-compliant format, and he demanded that WKKC produce documents as searchable PDFs. WKKC complied with that request, and it is not appropriate to fault WKKC for indulging Plaintiff's request to produce documents in a format that does not reflect custodial metadata.

[2] Plaintiff also notes that WKKC's non-custodial production included a handwritten manufacturing record that included notations regarding the operating parameters used to manufacture Froot Loops with Marshmallows cereal. *See* Letter at 4. WKKC is in the process of reviewing these records and determining whether they are relevant and can be produced without undue burden.

importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* When a party "seek[s] searches of additional custodians beyond those initially disclosed," that party must "demonstrate that the additional requested custodians would provide *unique* relevant information by providing evidence that there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 587 (E.D.N.Y. 2024) (emphasis in original); *see also GMO Gamecenter USA, Inc. v. Whinstone US Corp.*, 2025 WL 722853, at *2 (S.D.N.Y. Mar. 5, 2025) (similar). Plaintiff has not made that showing with respect to either of the two custodians he seeks to add.

As Plaintiff acknowledges, WKKC has agreed to search the custodial files of seven individuals who were involved in the manufacturing and/or labeling of Froot Loops with Marshmallows cereal. *See* Letter at 4–5. Those individuals include:

- Cris Corlito (Director, Regulatory Affairs North America)
- Neal Francisco (Senior Food Developer)
- Katie Gyekis (Product Development Scientist)
- Kaysie Hook (Manager, Wellbeing & Regulatory)
- A.J. Spicer (Director, R&D Core Technology)
- Traci Tooley (Wellbeing & Regulatory Business Partner)
- Joshua Reid (Vice President, Head of R&D)

These seven custodians collectively cover all of the issues that are relevant in this litigation—including the labeling of Froot Loops with Marshmallows cereal, the determination of the cup density and serving size of Froot Loops with Marshmallows cereal, the process whereby WKKC

manufactures and packages Froot Loops with Marshmallows cereal, and WKKC's policies and procedures for calculating serving sizes in accordance with the FDA regulations.

Plaintiff nonetheless insists that WKKC must review and produce documents from two additional custodians, Sarah Ludmer and Emily Fotinos, because they were involved in drafting WKKC's company-wide policy governing the determination of cup densities and serving sizes. *See* Letter at 5. But these individuals are not involved in calculating the serving sizes or cup densities on the one WKKC product at issue in this case—Froot Loops with Marshmallows cereal. Instead, they are regulatory specialists who were previously involved in implementing a company-wide policy that other employees would implement with respect to specific products. Cris Corlito, who is an existing custodian, is the regulatory specialist who is currently tasked with maintaining and updating the current cup density policy. To the extent Plaintiff seeks discovery on this policy, there are less intrusive means—such as a 30(b)(6) deposition—to get information on WKKC's policy without requiring WKKC to engage in burdensome and expensive custodial discovery. Indeed, even assuming for argument's sake that Ms. Ludmer and Ms. Fotinos had a few relevant documents in their custodial files, that alone does not mean WKKC must add them as custodians. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *7 (S.D.N.Y May 15, 2018) ("[A] party requesting discovery may not be entitled, under the rules of proportionality, to every single relevant document.").

That is particularly true because the parties' agreed-upon search terms and custodians have yielded a high rate of irrelevant and non-responsive documents. WKKC has reviewed 30,948 documents that it identified using the seven custodians it agreed to search and the search terms that the parties negotiated, and it has identified only 547 responsive documents—which reflects a

responsiveness rate of less than 2%. WKKC's preliminary estimate is that Ms. Ludmer's custodial files contain approximately 18,797 files and that Ms. Fotinos's custodial files contain approximately 14,710 items, which amounts to over 33,000 files between them. Given the low rate of responsiveness to date, it would not be appropriate to require WKKC to review thousands of additional documents from Ms. Ludmer's and Ms. Fotinos's custodial files, particularly absent any evidence that these two individuals have responsive information that other custodians do not. This Court should not require WKKC to go on a "fishing expedition" for responsive documents simply because Ms. Fotinos and Ms. Ludmer's names appear on a single document that is currently being maintained and implemented as to the relevant products by other custodians. *Kairam v. West Side GI, LLC*, 2023 WL 3220159, at *2 (S.D.N.Y. Feb. 24, 2023).

**III. Conclusion.**

WKKC respectfully requests that the Court: (1) refrain from issuing any rulings regarding non-custodial discovery until and unless a live dispute arises; and (2) deny Plaintiff's request to require WKKC to search the custodial files of Sarah Ludmer and Emily Fotinos.

Respectfully submitted,

Dean N. Panos
Counsel for WK Kellogg Co and Walmart Inc.

CC: All counsel (via ECF)